## MINNEAPOLIS STAR & TRIBUNE COMPANY v.
## COMMISSIONER OF TAXATION.

177 N. W. (2d) 33.

May 1, 1970—No. 42029.

*Hayner N. Larson, Robert J. Christianson, Jack D. Gage,* and
*Faegre & Benson,* for relator.

118

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, and *C. H. Luther,* Deputy Attorney General, for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

PETERSON, JUSTICE.

The commissioner of taxation disallowed a deduction for certain net operating losses claimed by relator taxpayer for its taxable year ended February 24, 1962, and accordingly assessed additional tax with interest for that period. Upon appeal, the Tax Court sustained the commissioner's order. We issued a writ of certiorari to review the order of the Tax Court.

All relevant facts have been stipulated. Relator, a Delaware corporation, has its general offices and commercial domicile in Minnesota, where throughout the relevant period of time it has published two daily newspapers. In January 1960 relator organized another Delaware corporation known as the San Fernando Valley Times Company, the stock of which was owned entirely by relator. This new company acquired and operated the Valley Times, a newspaper published daily in San Fernando, California. On July 31, 1961, all of the assets of the San Fernando Valley Times Company were distributed to relator in complete liquidation, and the stock was redeemed. As the successor corporation to the predecessor subsidiary, relator would succeed to the subsidiary's net operating loss carryover by the terms of Minn. St. 290.138, subd. 1. During the period from acquisition to liquidation, the San Fernando Valley Times Company sustained net operating losses of $1,054,977. This sum constituted on July 31, 1961, a net operating loss carryover under Minn. St. 290.095, subd. 2(a)(2), and it was deducted in relator's return for the taxable year ending February 24, 1962. The commissioner disallowed the deduction on the basis of § 290.095, subd. 4(d, h),

which puts in issue the proper construction of paragraphs (d) and (h).

A preliminary issue, likewise one of statutory construction, relates to the statutory limitation of time for making assessment of additional tax. Relator's return for the taxable year was filed November 15, 1962 (pursuant to extension of time duly granted by the commissioner). The commissioner issued an audit report on January 24, 1966, which, among other things, disallowed the above stated net operating loss deduction, with resultant increased tax assessment. Relator filed a written protest to the proposed tax assessment on February 4, 1966. Hearing on the protest was set for March 22, 1966, but upon relator's repeated requests it was successively rescheduled. On May 12, 1966, incident to such rescheduling, a representative of the commissioner notified relator by telephone that the statutory time for assessment would expire on May 15, 1966, so that an agreement for extension of such time would have to be executed. On May 13, 1966, relator signed and delivered to a representative of the commissioner an extension agreement prepared and presented by the commissioner. It was not until May 20, 1966, however, that the commissioner, by machine stamp, also signed the extension form.

■ Minn. St. 290.49, subd. 8, provides:

"Where before the expiration of the time prescribed in subdivisions (1) and (2) for the assessment of the tax, *the commissioner and the taxpayer consent in writing* to an extension of time for the assessment of the tax, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent *agreements in writing* made before the expiration of the period previously agreed upon." (Italics supplied.)

The usual form used by the commissioner to make the statute

120

functional, as executed in the instant case, is set out in the margin.[1]

[1] "Form 400

RECEIVED
MAY 13 1966
STATE OF MINNESOTA
DEPT. OF TAXATION
INCOME TAX DIVISION

"Department of Taxation
Income Tax Division
Centennial Office Building
St. Paul, Minnesota 55101

"CONSENT FIXING PERIOD OF LIMITATION UPON ASSESSMENT
INCOME AND EXCISE TAX

"In pursuance of the provisions of Chapter 405, Laws of 1933 and Acts amendatory thereof,

MINNEAPOLIS STAR AND TRIBUNE COMPANY

425 Portland Avenue, Minneapolis, Minnesota 55415 a taxpayer, and the Commissioner of Taxation hereby consent and agree as follows:

"That the amount of any income or excise taxes due under any return made by or on behalf of the above named taxpayer for the taxable year ENDED February 24, 1962 under the Laws of 1933, Chapter 405, and Acts amendatory thereof, may be assessed at any time within one year after November 15, 1965.

"That the taxpayer expressly waives the right to assert any and all defenses based upon any Statute of Limitations with respect to assessment as provided by Chapter 405, Laws of 1933 and Acts amendatory thereof.

"Minneapolis Star and Tribune Company
/s/ C. B. McCue
C. B. McCue, Treasurer

"(Seal)
"Dated this 13th day of May 1966.

"DEPARTMENT OF TAXATION
ROLLAND F. HATFIELD
Commissioner of Taxation

"Dated this 20th day of May 1966.

"By C. A. Anderson [facsimile]
Director
Income Tax Division"

Relator contends that the consent in writing to extension of the statutory assessment period is not effective unless timely executed by *both* the commissioner and the taxpayer, which obviously was not done in this case. Quite similar provisions of Federal tax statutes have been construed in several cases, with varying results. Several, in agreement with relator, hold that the language of the statute is unambiguous, making signature by the commissioner mandatory and indispensable to the validity of the instrument.[2] Others, to the contrary, read the statutory language with greater regard to its practical purposes, concluding that provision for the signature by the commissioner is directory, not mandatory.[3] We think the latter construction is the more reasonable and realistic.

The statute uses the phrases, "consent in writing" and "agreements in writing," interchangeably. The written instrument, however, is noncontractual in nature, being in essence a waiver by the taxpayer of a limitations period beneficial only to itself. In Florsheim Bros. Drygoods Co. v. United States, 280 U. S. 453, 50 S. Ct. 215, 74 L. ed. 542, the taxpayers argued that the "waivers" were binding contracts and that a law passed after the contracts were entered into, which in effect extended the time within

---

[2] See, S. S. Pierce Co. v. United States (1 Cir.) 93 F. (2d) 599; United States v. Bertelsen & Petersen Engineering Co. (1 Cir.) 95 F. (2d) 867, 98 F. (2d) 132, affirmed, 306 U. S. 276, 59 S. Ct. 541, 83 L. ed. 647; Commr. of Int. Rev. v. United States Refractories Corp. (3 Cir.) 64 F. (2d) 69, affirmed per curiam by an equally divided court sub nom. Helvering v. United States Refractories Corp. 290 U. S. 591, 54 S. Ct. 94, 78 L. ed. 521; Atlantic Mills of R. I. v. United States, 3 F. Supp. 699, 78 Ct. Cl. 219; Corn Products Refining Co. v. Commr. of Int. Rev. 22 B. T. A. 605. Cf. Rohde v. United States (9 Cir.) 415 F. (2d) 695.

[3] See, Florsheim Bros. Drygoods Co. v. United States, 280 U. S. 453, 50 S. Ct. 215, 74 L. ed. 542; Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. ed. 335; Holbrook v. United States (9 Cir.) 284 F. (2d) 747; Commr. of Int. Rev. v. Hind (9 Cir.) 52 F. (2d) 1075; Lesser v. United States (2 Cir.) 368 F. (2d) 306; The Lorain Journal Co. v. United States (N. D. Ohio) 201 F. Supp. 752; 10 Mertens, Law of Federal Income Taxation, § 57.53.

which the commissioner could assess, was an unconstitutional impairment of those contracts. The court, through Mr. Justice Brandeis, responded this way (280 U. S. 466, 50 S. Ct. 219, 74 L. ed. 550):

"* * * The waivers executed by the parties were not contracts binding the Commissioner not to make the assessments and collections after the periods specified. At the time when the waivers were executed, the Commissioner was without power under the statute to assess or collect the taxes after the statutory period, as extended by the waivers. A promise by the Commissioner not to do what by the statute he was precluded from doing, would have been of no significance. * * *

"Stress is laid on the use of the words 'agree' and 'agreement' in the Acts and Regulations. But these are ordinary words having no technical significance. It is also urged that, unless a contract was intended, there is no reason why the consent of the Commissioner should have been required. But an otherwise plain meaning should not be distorted merely for the sake of finding a purpose for this administrative requirement. If a reason must be found, it exists in the general desirability of the requirement as an administrative matter. It serves to keep the Commissioner in closer touch with the matters which he is charged to administer. It avoids claims of improvident execution of waivers and unauthorized exactions by subordinates of the Department for the purpose of curing their own delinquencies. And it provides a formal procedure which is generally desirable for the Commissioner, collectors, and subordinates in the Department."

Interpreting the statutory requirement as directory does not deny the taxpayer any benefit intended by the legislature. The taxpayer desired a delay beyond the statutory assessment period in which to contest tax liability asserted against it. The taxpayer suffers no surprise by the state's assertion of liability and is not confronted with the introduction of stale evidence against it, situations which statutes of limitations are designed to avoid. There

is no realistic circumstance in which the commissioner would, in the absence of his own signature, undertake to deny or revoke an extension of the assessment period. The only realistic consequence of the strict construction urged by relator would be a loss of revenue owed the state and a windfall to the taxpayer at whose requests the delay was induced. The legislature, of course, would never intend any such result.

We hold, therefore, that the written consent for extension of the time in which to assess taxes prepared by the commissioner and delivered to relator, thereafter timely signed by relator and redelivered to the commissioner, was a sufficient compliance with the statute so as to extend the time in which the commissioner could make the challenged assessment of additional tax.

■ One of the two statutory provisions upon which the commissioner ordered disallowance of relator's carryover net operating loss deduction—and the provision upon which the Tax Court sustained that order—is Minn. St. 290.095, subd. 4(d), hereafter referred to as paragraph (d):

"No taxpayer shall be allowed a net operating loss deduction for or with respect to losses connected with income producing activities if the income therefrom would not be required to be either assignable to this state or included in computing the taxpayer's taxable net income."

The language of the statute on its face speaks for the disallowance. The net operating losses, as stipulated, were sustained by relator's subsidiary, San Fernando Valley Times Company, in connection with its out-of-state income-producing activities, income which was not assignable to this state and not included in computing relator's taxable net income.

Relator, however, makes an impressive argument that the language of paragraph (d), read in relationship to other provisions of the same section, is by no means clear and unambiguous. It argues that the paragraph does not speak to the actual computation of the amount which is allowed as a deduction in computing

124

net income, a deduction which is defined in subd. 3 of § 290.095,[4] but is concerned only with the computation of the current (taxable year) net operating loss, which is defined in subd. 1.[5] Close scrutiny of all the paragraphs of subd. 4,[6] the argument runs, will

[4] "The amount of the net operating loss allowed as a deduction in computing net income shall be the aggregate of the net operating loss carryovers and carrybacks to the taxable year reduced by the amount, if any, by which the net income (computed with the exceptions and limitations provided in subdivision 4 (b) through (h)) exceeds the net income (computed without such deduction)."

[5] "The term 'net operating loss' as used in this section shall mean the excess of the deductions of the kind provided for in section 290.09, permitted to be taken in computing a taxpayer's taxable net income, as that term is defined in section 290.01, subdivision 19, over the gross income used in computing such taxable net income, with the exceptions, additions and limitations provided in subdivision 4. A net operating loss deduction shall be available under this section only to corporate taxpayers except as provided in subdivisions 6, 7 and 9 hereof."

[6] "The exceptions, additions and limitations referred to in subdivisions 1, 2, and 3 shall be as follows:

"(a) Deductions otherwise allowable in computing taxable net income, but which are not attributable to the operation of a trade or business regularly carried on by the taxpayer, shall be allowed only to the extent of the amount of the gross income, not derived from such trade or business, included in computing such taxpayer's taxable net income. For the purpose of this paragraph, deductions and gross income shall be computed with the exceptions, additions and limitations provided in paragraphs (4) (b), (d), (e), (f), (g), and (h).

"(b) There shall be included in computing the gross income used in computing taxable net income the amount of the interest, excludable from gross income under section 290.08, that would be treated as assignable to this state, decreased by the amount of interest paid or accrued to purchase or carry the investments earning such interest to the extent that such interest would not have been deductible in computing the taxpayer's taxable net income.

"(c) In the case of a taxpayer conducting any trade or business whose taxable net income is determined by an allocation of net income under section 290.19, the net operating loss shall be computed for any such business in the same manner as if the entire gross income there-

reveal that all are aimed at the computation of current net operating loss, and that paragraph (d), consistent with the seven others, does not restrict the computation of the deduction. Nothing in subd. 4, relator concludes from this analysis, should preclude it from including the stipulated past net operating loss of the San Fernando Valley Times Company in the computation of the net operating loss deduction (except as it is relevant in computing current net income). A contrary construction of subd. 4, it adds, would be inequitable and defeat the purpose of § 290.138, subd. 1, which allows a successor corporation to succeed to the net operating loss carryover of the predecessor corporation.

We acknowledge, as we recently did in Reuben L. Anderson-Cherne, Inc. v. Hatfield, 279 Minn. 478, 158 N. W. (2d) 840, that the scope of subd. 4 is not altogether clear. However, here as

---

from were assignable to this state, and the entire amount of such net operating loss (computed with the exceptions, additions and limitations provided in paragraphs (b), (d), (e), (f), (g) and (h)) shall be carried over in accordance with the provisions of subdivisions 2 and 3 as a deduction in computing net income. The net operating loss referred to herein shall be separately computed in regard to such separate business.

\* \* \* \* \*

"(e)   In computing the net operating loss for any taxable year, a net operating loss for any prior or succeeding year shall not be allowed as a deduction.

"(f)   The amount deductible on account of losses from sales or exchanges of capital assets shall not exceed the amount includible on account of gains from sales or exchanges of capital assets. The deduction for long-term capital gains provided by section 290.16, subdivision 4, shall not be allowed.

"(g)   Renegotiation of profits for a prior taxable year under the renegotiation laws of the United States of America, including renegotiation of the profits with a subcontractor, shall not enter into the computation of a net operating loss.

"(h)   Federal income and excess profits taxes shall not be allowed as a deduction in computing a net operating loss."

there, we are confronted with the firmly established rule that taxation is presumed and that the taxpayer must show by clear and express language that it is entitled to a deduction. Demonstration of ambiguity as to legislative intent does not itself fulfill the taxpayer's burden of persuasion, for any ambiguity as to a deduction must be resolved against the taxpayer. It is not inequitable to give differential tax treatment to the net operating loss carryover of a predecessor corporation on the basis of geographical differences of income-producing operations. The legislature would have sound reason for refusing to allow a taxpayer to offset Minnesota income with losses sustained in activities the income from which would never have been subject to Minnesota tax.[7]

We hold, therefore, that § 290.095, subd. 4(d), disallows deduction by a parent corporation of the carryover of a net operating loss sustained by a subsidiary corporation, to which the parent corporation succeeded under § 290.138, subd. 1, upon liquidation of the subsidiary, where the subsidiary's income-producing activities causing the loss were not carried on in this state.

The other statutory provision upon which the commissioner based disallowance of relator's net carryover loss deduction is paragraph (h) of § 290.095, subd. 4:

"Federal income and excess profits taxes shall not be allowed as a deduction in computing a net operating loss."

Federal income tax paid by relator in the taxable year was $2,295,842, which, under our holding in Reuben L. Anderson-Cherne, Inc. v. Hatfield, *supra,* would in this case reduce the amount of the claimed deduction to zero. The Tax Court, however, sustained the order of the commissioner on the basis of

---

[7] The Minnesota taxpayer with out-of-state holdings will, of course, be allowed a benefit of continued losses on those holdings if and when he sells at a loss, in the form of capital loss deductions. See, Minn. St. 290.16.

paragraph (d), stating that it was accordingly not necessary to consider the applicability of paragraph (h).[8]

Affirmed.

---

[8] The Tax Court did observe, "* * * [H]owever, it should be noted that as a result of * * * *Anderson-Cherne v. Hatfield, 279 Minn. 478, 158 N. W. (2d) 840,* the position of [relator] would have to be disallowed." Following the issuance of that opinion, we granted reargument. Counsel for relator was allowed to appear amicus curiae at the rehearing because the instant case was then pending in the Tax Court; and, because of his high competence, he was permitted to make the oral argument at that time. We decline the invitation to again reexamine the issue there decided, deeming it now a legislative responsibility to effect necessary clarification or revision of the statutory provisions involved in both cases.