GULF OIL CORPORATION, APPELLEE, *v.* LINDLEY,
TAX COMMR., APPELLANT.

[Cite as Gulf Oil Corp. v. Lindley (1980),
61 Ohio St. 2d   23.]

(No. 79-244—Decided January 9, 1980.)

24

*Messrs. Glander, Brant, Ledman & Newman* and *Mr. James H. Ledman,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. James C. Sauer,* for appellant.

JACKSON, J.  The Tax Commissioner has advanced the following proposition of law:

"R. C. 5733.04 does not allow a taxpayer in computing its net income to deduct those net operating losses incurred by

subsidiary corporations in years prior to their merger into the taxpayer, during which they did no business in Ohio."

By this single proposition of law, two issues are presented for disposition by this court:

(1) Following a merger, do corporations succeed to the net operating losses of their former subsidiaries for purposes of the Ohio franchise tax?

(2) If so, do corporations succeed to the net operating losses of former subsidiaries which were not subject to the Ohio franchise tax during the years that the net operating losses were sustained?

The Ohio franchise tax is imposed against foreign corporations for the privilege of doing business in this state, owning or using property in this state, or holding a certificate of compliance authorizing them to do business in this state. R. C. 5733.01 (A). Each such corporation is required to file an annual corporation report which determines the value of the issued and outstanding shares of stock of the corporation. R. C. 5733.02 and 5733.05. The base or measure of the franchise tax is the value of the issued and outstanding shares of the corporation. R. C. 5733.05. The value of these shares is computed on a net worth basis and a net income basis, and a separate tax is computed on each basis. R. C. 5733.05 (A) and (B). The taxpayer corporation must pay the greater of the tax upon the net worth and the tax upon net income. R. C. 5733.06. In this case, the net income factor of the taxpayer is greater than its net worth factor, so we must determine whether the claimed deduction operates to reduce the net income factor.

The net operating loss deduction of the Ohio franchise tax is set forth in R. C. 5733.04, as follows:

"(I) 'Net income' means the taxpayer's taxable income before operating loss deduction and special deductions, as required to be reported for the taxpayer's taxable year under the Internal Revenue Code, subject to the following adjustments:

"(1) Deduct any net operating loss incurred in any taxable years ending in 1971 or thereafter but exclusive of any net operating loss incurred in taxable years ending prior to January 1, 1971. This deduction shall not be allowed in any

tax year commencing before December 31, 1973 but shall be carried over and allowed in tax years commencing after December 31, 1973 until fully utilized in the next succeeding taxable year or years in which the taxpayer has net income, but in no case for more than five consecutive years after the taxable year in which the net operating loss occurs. The amount of such net operating loss, as determined under the allocation and apportionment provisions of section 5733.051 and division (B) of section 5733.05 of the Revised Code for the year in which the net operating loss occurs, shall be deducted from net income, as determined under the allocation and apportionment provisions of section 5733.051 and devision (B) of section 5733.05 of the Revised Code, to the extent necessary to reduce net income to zero with the remaining unused portion of the deduction, if any, carried forward to the remaining years of the five years after the net operating loss year, or until fully utilized, whichever occurs first."

The Revised Code does not define the term "net operating loss," but it does provide in R. C. 5733.04 (K) that any term used in R. C. Chapter 5733 has the same meaning as when used in a comparable context in the federal income tax laws:

"Any term used in this chapter has the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes unless a different meaning is clearly required. Any reference in this chapter to the Internal Revenue Code includes other laws of the United States relating to federal income taxes."

Sections 172 (a) and (c) of the Internal Revenue Code define "net operating loss" as follows:

"Net operating loss deduction.

"(a) Deduction allowed. There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term 'net operating loss deduction' means the deduction allowed by this subsection.
"* * *

"(c) Net operating loss defined. For purposes of this sec-

tion, the term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income. Such excess shall be computed with the modifications specified in subsection (d)."

Thus, for purposes of the Ohio franchise tax, the definition of net operating loss is the excess of deductions over gross income, as modified by Section 172 (d) of the Internal Revenue Code.[2]

---

[2] Section 172(d) of the Internal Revenue Code provides:

"Modifications. The modifications referred to in this section are as follows:

"(1) Net operating loss deduction. No net operating loss deduction shall be allowed.

"(2) Capital gains and losses of taxpayers other than corporations. In the case of a taxpayer other than a corporation—

"(A) the amount deductible on account of losses from sales or exchanges of capital assets shall not exceed the amount includable on account of gains from sales or exchanges of capital assets; and

"(B) the deduction for long-term capital gains provided by section 1202 shall not be allowed.

"(3) Deduction for personal exemptions. No deduction shall be allowed under section 151 (relating to personal exemptions). No deduction in lieu of any such deduction shall be allowed.

"(4) Nonbusiness deductions of taxpayers other than corporations. In the case of a taxpayer other than a corporation, the deductions allowable by this chapter which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business. For purposes of the preceding sentence—

"(A) Any gain or loss from the sale or other disposition of—

"(i) property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or

"(ii) real property used in the trade or business, shall be treated as attributable to the trade or business;

"(B) the modifications specified in paragraphs (1), (2) (B), and (3) shall be taken into account;

"(C) any deduction allowable under section 165(c) (3) (relating to casualty losses) shall not be taken into account; and

"(D) any deduction allowed under section 404 or section 405 (c) to the extent attributable to contributions which are made on behalf of an individual who is an employee within the meaning of section 401 (c) (1) shall not be treated as attributable to the trade or business of such individual.

"(5) Special deductions for corporations. No deduction shall be allowed under section 242 (relating to partially tax-exempt interest) or under section 922 (relating to Western Hemisphere trade corporations).

"(6) Computation of deduction for dividends received, etc. The deductions allowed by section 243 (relating to dividends received by corporations), 244 (relating to dividends received on certain preferred stock of public utilities), and 245 (relating

R. C. 5733.031 (B) also provides that the taxpayer must use the same method of accounting when computing his Ohio franchise tax as it uses when computing its federal income tax:

"A taxpayer's method of accounting shall be the same as his method of accounting for federal income tax purposes. In the absence of any method of accounting for federal income tax purposes, income shall be computed under such method as in the opinion of the Tax Commissioner clearly reflects income***."

The Internal Revenue Code contains a series of provisions which govern the carryover of certain items following corporate acquisitions. Section 381 of the Code prescribes how an acquiring corporation succeeds to and takes into account numerous items, including the net operating loss, earnings and profits, capital loss, and inventory of the corporation that was acquired. This section essentially prescribes the method of accounting to be used by the acquiring corporation for these items for federal income tax purposes. With respect to net operating loss carryovers, Section 381 provides, in pertinent part, as follows:

"Carryovers in certain corporate acquisitions.

"(a) General rule. In the case of the acquisition of assets

---

to dividends received from certain foreign corporations) shall be computed without regard to section 246 (b) (relating to limitation on aggregate amount of deductions); and the deduction allowed by section 247 (relating to dividends paid on certain preferred stock of public utilities) shall be computed without regard to subsection (a) (1) (B) of such section.

"(7) In the case of any taxable year for which part II of subchapter M (relating to real estate investment trusts) applies to the taxpayer—

"(A) the net operating loss for such taxable year shall be computed by taking into account the adjustments described in section 857 (b) (2) (other than the deduction for dividends paid described in section 857 (b) (2) (B) ); and

"(B) where such taxable year is a 'prior taxable year' referred to in paragraph (2) of subsection (b), the term 'taxable income' in such paragraph shall mean 'real estate investment trust taxable income' (as defined in section 857 (b) (2) ).

"(8) Zero bracket amount. In the case of a taxpayer other than a corporation, the zero bracket amount shall be treated as a deduction allowed by this chapter. For purposes of subsection (c)—

"(A) the deduction provided by the preceding sentence shall be in lieu of any itemized deductions of the taxpayer, and

"(B) such sentence shall not apply to an individual who elects to itemize deductions."

of a corporation by another corporation—***the acquiring corporation shall succeed to and take into account, as of the close of the day of distribution or transfer, the items described in subsection (c) of the distributor or transferor corporation, subject to the conditions and limitations specified in subsections (b) and (c).

"***

"(c) Items of the distributor or transferor corporation. The items referred to in subsection (a) are:

"(1) Net operating loss carryovers.***"

The merger of Gulf Oil Corporation with its wholly-owned subsidiaries met the requirements of Section 381, and, therefore, under federal law, Gulf succeeded to and must take into account the net operating loss carryovers of its former subsidiaries.

The Board of Tax Appeals held in *Ben Tom Supply Co., Inc.*, v. *Lindley*, 60 B.T.A. Dec., Case No. E 21 (September 2, 1976), and in the present cause that the acquiring corporation succeeds to and must take into account the net operating loss of the corporation that was merged into it because this would be the result under federal income tax law. The board found that Sections 381 (a) and (c) of the Internal Revenue Code either define the term "net operating loss" or prescribe a method of accounting, and as such supplement R. C. Chapter 5733.

We are persuaded that Sections 381 (a) and (c) prescribe a method of accounting for a net operating loss following corporate acquisitions. These provisions do not create a new deduction; rather, corporations are entitled to deduct net operating loss carryovers under Section 172 of the Internal Revenue Code and R. C. 5733.04 (I) (1). Section 381 merely fills a gap in Ohio law. Since R. C. Chapter 5733 does not prescribe how an acquiring corporation must account for the net operating loss carryover of the corporation it acquired, we hold that the Board of Tax Appeals correctly referred to the provisions of Section 381, insofar as these provisions relate to net operating losses sustained wholly within the state of Ohio.

Even though we find that under Ohio law acquiring corporations are generally entitled to succeed to the net

operating loss carryover of the corporations they acquire, it is clear that this does not apply to the net operating loss of an acquired corporation which was not a "taxpayer" at the time the loss was originally sustained.

R. C. 5733.04 (I) defines "net income" as the taxpayer's taxable income before operating loss deduction and special deductions, subject to certain modifications including the Ohio net operating deduction. R. C. 5733.04 (I) (1) provides for the Ohio net operating loss deduction, and states that it may be allowed in tax years commencing after December 31, 1973, in which the *taxpayer* has net income.

A "taxpayer" is defined in R. C. 5733.04 (B) for purposes of the Ohio franchise tax as follows: " 'Taxpayer' means a corporation subject to the tax imposed by this chapter." Gulf Oil Company of Pennsylvania and Sequoia Refining Corporation were not "taxpayers" during the years in which their net operating losses were sustained. For purposes of the Ohio franchise tax, they had no net operating loss during the years 1971 to 1974. Gulf Oil Corporation did not succeed to any Ohio net operating loss carryover when the subsidiaries were merged into it.

The same result obtains in a comparable context under federal law. The strictly analogous situation under federal law is one in which a nonresident foreign subsidiary that did not have any United States income or deductions is merged with a parent corporation that is subject to the Internal Revenue Code. The Commissioner of the Internal Revenue Service has ruled in Rev. Rul. 72-421, that in such a situation the parent corporation is not entitled to deduct the net operating loss carryover of its subsidiary.[3]

---

[3] The pertinent text of Internal Revenue Ruling 72-421 is as follows:

"***At December 31, 1970, S corporation, a foreign corporation, was liquidated into P corporation, its domestic parent, in a transaction that qualified as a liquidation to which the provisions of section 332 of the Code were applicable.

"S was at no time engaged in a trade or business in the United States and was a nonresident foreign corporation as provided by section 1.881-1 of the Income Tax Regulations. S had no income from sources within the United States and had no treaty income. S made no election pursuant to a tax convention to be subject to United States tax on a net basis as though it were engaged in trade or business within the United States through a permanent establishment situated therein. S was at no time subject to United States income tax under chapter 1 of the Code and had filed no United States income tax returns.

"The net operating loss of a liquidated nonresident foreign subsidiary that had no United States income or deductions may not be carried over to the domestic parent corporation." Rev. Rul. 72-421, 1972-2 Cum. Bull. 166.

R. C. 5733.04 (K) provides that terms used in R. C. Chapter 5733 have the same meaning as when used in a comparable context in the federal income tax law, and R. C. 5733.031 requires the taxpayer to use the same method of accounting as is used for federal income tax purposes. The Board of Tax Appeals did not correctly determine the "comparable context" of the present case under federal law, nor did it apply the "same***method of accounting" that federal law would apply to a case where a foreign subsidiary without any United States income or deductions is merged into another corporation. Rev. Rul. 72-421 prohibits the acquiring corporation from succeeding to the net operating loss carryover of its foreign subsidiary where the subsidiary had no United States income or deductions. The policy served by this ruling is to prevent a taxpayer from taking a deduction for a net operating loss where the profit, if any had been generated, would not have been subject to taxation. The same policy is served by our ruling in this case. If the foreign subsidiaries of Gulf Oil Corporation had turned a profit from 1971 to 1974, their net income would not have been subject to the Ohio franchise tax. Since their income was not subject to taxation by this state, their losses may not be used as a deduction.[4]

"$S$ had operated at a loss for several years and if it had been a domestic corporation would have had a net operating loss carryover at December 31, 1970, as provided by section 172 of the Code.
"* * *

"Accordingly, since in the instant case $S$ was a foreign corporation not engaged in a trade or business within the United States and had no deductions under chapter 1 of the Code it had no net operating loss carryover determined under the provisions of section 172 and subchapter N of the Code. Therefore, its net operating loss is not a carryover to $P$ under section 381 of the Code." Rev. Rul. 72-421, 1972-2 Cum. Bull. 166.

[4] We are not presented at this time with a case where the distributor or transferor corporation was subject to the Ohio Franchise Tax during the taxable year in which its net operating loss was sustained. Under R. C. 5733.04 (I) (1), the amount of such a corporation's net operating loss is determined by the allocation and apportionment provisions of R. C. 5733.051 and 5733.05 (B). When such a corporation is acquired by another corporation, the acquiring corporation succeeds to and

For the foregoing reasons, the decision of the Board of Tax Appeals, being unreasonable and unlawful, is reversed.

*Decision reversed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and HOLMES, JJ., concur.

JACKSON, J., of the Eighth Appellate District, sitting for LOCHER, J.

WILLIAM B. BROWN, J., concurring. The opinion of the court buries the crux of this case in footnote 4. We should rule that in connection with corporate asset acquisitions described in Section 381 (a) of the Internal Revenue Code, an acquiring corporation may inherit only those transferor or distributor corporation net operating losses which were previously apportioned to Ohio pursuant to R. C. 5733.05 (B) (2), and which the transferor or distributor corporation could have utilized[5] absent the acquisition. Such a rule properly focuses on the existence of *Ohio* net operating losses. As such, it would certainly dispose of the case at bar where the distributor subsidiaries had insufficient Ohio contacts during the loss years at issue to qualify as franchise taxpayers. The emphasis in the syllabus placed on the subsidiaries not being "taxpayers" simply introduces the possibility that our decision will be read too narrowly, especially if footnote 4 is ignored.[6]

It is also both unnecessary and confusing for the court to assert that the subsidiaries, and not Gulf, are "taxpayer (s)" within the meaning of R. C. 5733.04 (I) (1).

must take into account only that portion of the net operating loss of the distributor or transferor corporation which was allocated to Ohio during the year in which the net operating loss occurred.

[5] For example, R. C. 5733.04 (I) (1) limits the carry-forward period to five years. It would follow from the rule set forth here that an acquiring corporation would succeed only to the unused portion of this period.

[6] Although there is no case law on the issue, federal tax rules in a comparable context (merger of non-resident foreign corporation into a domestic parent) are similar in effect. See Section 882 (c) (1) (A) of the Internal Revenue Code; Treas. Regs. 1.861-8 and 1.381 (a)-1 (c). It is also noted that the analysis in Rev. Rul. 72-421 (discussed by the court) is based on the above provisions and is thus fully supportive of the rule espoused here.

R. C. 5733.04 (I) directs a corporate taxpayer to adjust its federal taxable income in certain ways to reflect Ohio franchise tax base income. In this connection, R. C. 5733.04 (I) (1) directs the "taxpayer" to set off certain earlier net operating losses against its current taxable income. To suggest that this "taxpayer" is not Gulf is confusing at best, and may cause the commissioner difficulties in other contexts. Moreover, this definitional manipulation is unnecessary since we still need to determine the amount of net operating losses Gulf may properly inherit from its subsidiaries.

The statutory basis for the above determination should have been the phrase in R. C. 5733.04 (I) (1) that "[t]he amount of such net operating loss as determined under the allocation and apportionment provisions***_for the year in which the net operating loss occurs,_ shall be deducted from net income***." (Emphasis added.)[7] Since R. C. 5733.04 (I) (1) was not drafted with corporate acquisitions in mind, it does not inform Gulf _whose_ apportionment ratios should be multiplied by its subsidiaries' earlier accumulated net operating losses. Surely, to use any ratios but those of the subsidiaries for each of their loss years, respectively, would be absurd. We should simply read this requirement into R. C. 5733.04 (I) (1) until the General Assembly drafts a provision tailored to corporate acquisitions.

CELEBREZZE, C. J., HERBERT and P. BROWN, JJ., concur in the foregoing concurring opinion.

---

[7] In contradiction to this language, Gulf used its _merger year_ apportionment ratio, not its subsidiaries' _loss year_ apportionment ratios, to calculate its entitlement to its subsidiaries' pre-merger net operating losses.