BORDEN, INC., APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as Borden, Inc. *v.* Limbach (1990), 49 Ohio St. 3d 240.]

(No. 88-1780—Submitted November 21, 1989—Decided March 14, 1990.)

*Jones, Day, Reavis & Pogue, Roger F. Day* and *L. Clarke Budlong,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Richard C. Farrin* and *M. Linda Weigand,* for appellee.

WRIGHT, J. The transaction at issue in this case involved appellant Borden's sale of depreciable property owned by one of its Florida divisions. All this property was located in Florida and had no situs in Ohio at the time of sale. Because we hold that the meaning of "capital gain" discerned from the Internal Revenue Code cannot be used to allocate income for Ohio's franchise tax, we reverse the Board of Tax Appeals. We conclude that the General Assembly specifically excluded gains such as these from the reach of the Ohio franchise tax.

R.C. 5733.051 governs the potential allocation of taxable net corporate income to the state of Ohio. In fact, former R.C. 5733.051(A)(3) and (4) (now renumbered R.C. 5733.051[C] and [D]) deal specifically with the disposition of the types of property at issue here, namely, depreciable real property and depreciable tangible personal property. These two subsections state:

"Net income of a corporation subject to the tax imposed by this chapter shall be allocated and apportioned to this state as follows:

"* * *

"(3) Capital gains and losses from the sale or other disposition of real property *located in this state* are allocable to this state;

"(4) Capital gains and losses from the sale or other disposition of tangible personal property are allocable to this state if the property *had a situs in this state at the time of sale,* and the taxpayer is otherwise subject to the tax imposed by this chapter[.]" (Emphasis added.)

These subsections do not exempt capital gains from the franchise tax; they declare that capital gains resulting from the sale of property located outside Ohio are not included in the net income base on which the tax is computed. These subsections direct where the gain is taxed, not how much of it is taxed, as the commissioner contends. Thus, R.C. 5733.051(A)(3) and (4) define subjects of taxation, and any "ambiguit[ies] in * * * [them] must be resolved in favor of the taxpayer." *B.F. Goodrich Co.* v. *Peck* (1954), 161 Ohio St. 202, 53 O.O. 91, 118 N.E. 2d 525, paragraph three of the syllabus.

Borden maintains that we should employ the traditional meaning of "capital gain," "[t]he excess of proceeds over cost from the sale of a capital asset," Berenyi, The Modern American Business Dictionary (1982) 55, and allocate the entire gain to Florida. The commissioner argues that we should follow the federal tax law treatment of this gain, which recaptures previously deducted depreciation and taxes it as ordinary income, and apportion the recaptured depreciation to Ohio.

R.C. Chapter 5733 does not define the term "capital gain," but R.C. 5733.04(K) states:

"Any term used in this chapter has the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes unless a different meaning is clearly required. Any reference in this chapter to the Internal Revenue Code includes other laws of the United States relating to federal income taxes."

This provision incorporates federal income tax terms into Ohio's franchise

tax. Unless a different meaning is clearly required, terms used in the Ohio franchise tax statutes have the same meaning as they have in a comparable context for the federal income tax. *Gulf Oil Corp.* v. *Lindley* (1980), 61 Ohio St. 2d 23, 26, 15 O.O. 3d 42, 44, 398 N.E. 2d 790, 792.

The Internal Revenue Code does not contain a specific meaning for "capital gain." Nevertheless, Congress introduced the "capital gain" provision into the code to save the profits derived from the sale or exchange of assets from prohibitive surtaxes. 4 Mertens, The Law of Federal Income Taxation (1986) 10, Section 22.02. Historically, gain from disposition of property had been recognized as income. Rose & Chommie, Federal Income Taxation (3 Ed. 1988) 296-297, Section 6.01. Capital gains had received favorable treatment because Congress had granted them favorable treatment. Mertens, *supra*, at 10-31, Sections 22.02 to 22.06. This favorable treatment applies only when a taxpayer sells or exchanges a "capital asset." Mertens, *supra*, at 84, Section 22.11.

Section 1221, Title 26, U.S. Code defines a "capital asset" as all property held by a taxpayer except, *inter alia*: "(2) property, used in * * * [the taxpayer's] trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in * * * [the taxpayer's] trade or business[.]" Section 1222, Title 26, U.S. Code, moreover, sets forth various capital gain or loss meanings for different sale or exchange situations. However, this section does not contain a universal definition for "capital gain."

Nevertheless, items of depreciable property used in a trade or business, as in the instant case, "* * * are not capital assets and would not qualify for capital gain treatment." Mertens, *supra*, at 803, Section 22.124. However, Section 1231, Title 26, U.S. Code confers capital gain treatment as if these "section 1231" assets were capital assets. *Id.*

Moreover, Sections 1245 and 1250, Title 26, U.S. Code apply to this property. Mertens, *supra*, at 172-175, 199-201, Sections 22.25a and 22.25q.1; Rose & Chommie, *supra*, at 346-348, Section 7.10. In 1962, at the urging of the President, Congress withdrew capital gains treatment from gains on disposition of depreciable property, to the extent that depreciation had been deducted in prior years, by enacting Section 1245, Title 26, U.S. Code. Mertens, *supra*, at 173, Section 22.25a. Depreciation deductions, which had reduced ordinary income in prior years, were thus taxed as ordinary income upon the asset's disposition. In 1964, Congress applied this recapture treatment to real property by enacting Section 1250, Title 26, U.S. Code. Mertens, *supra*, at 200, Section 22.25q.1.

"* * * On sale of the property the excess of the amount realized over the recomputed basis is capital gain, while the remainder of the gain, represented by the difference between the recomputed basis and the adjusted basis, is characterized as ordinary income.
"* * *

"With respect to section 1231 property, any section 1245 or section 1250 recaptured gain is determined first, and only the balance, if any, is subject to the section 1231 netting process [capital gains treatment]." Rose & Chommie, *supra*, at 347-348, Section 7.10.

This analytical exercise demonstrates that the Internal Revenue Code does not contain a clear, universal meaning for "capital gain" that can be

used to allocate income for Ohio's franchise tax. The federal purpose is to afford and adjust tax advantages. The federal scheme employs a netting process that deems some portion of a gain as a capital gain for preferential treatment and the other portion of the gain as income for ordinary treatment. In contrast, Ohio, under R.C. 5733.051 (A)(3) and (4), defines what may be subject to its franchise tax, and this decision rests on where the property giving rise to the gain was when the corporation sold it. Consequently, the term "capital gain" is used in a different context, and its federal meaning, if one can be gleaned, cannot be applied to Ohio's allocation process.

The record unquestionably demonstrates that the gains at issue here were from the sale of depreciable real and tangible personal property neither located in nor having a taxable situs in Ohio. The General Assembly has unequivocally excluded such gains based on the disposition of property giving rise to the gains outside Ohio. Thus, we hold that the $50,091,942 in gain from disposition of depreciable personal property and the $220,746 in gain from disposition of real property should not have been treated as apportionable income but instead allocated entirely to Florida. Therefore, the decision of the BTA is reversed.

*Decision reversed.*

SWEENEY, HOLMES, FORD and RESNICK, JJ., concur.

MOYER, C.J., and DOUGLAS, J., dissent.

DONALD R. FORD, J., of the Eleventh Appellate District, sitting for H. BROWN, J.