[This opinion has been published in *Ohio Official Reports* at 85 Ohio St.3d 382.]

HARSCO CORPORATION, APPELLANT, *v.* TRACY, TAX COMMR., APPELLEE.

[Cite as *Harsco Corp. v. Tracy*, 1999-Ohio-396.]

*Taxation—Franchise tax—Term "capital gain" as used in R.C. 5733.051(C) and (D) includes recaptured depreciation income attributable to the sale of Ohio assets.*

(No. 97-2006—Submitted January 12, 1999—Decided May 5, 1999.)

APPEAL from the Board of Tax Appeals, No. 95-P-595.

_____

{¶ 1} In 1989 Harsco Corporation sold substantially all the assets of its Astro Division based in Wooster, Ohio. Approximately eighty-seven percent of Astro's assets were located in Ohio; the others were located in two other states. The sale price of $6.9 million assigned to the Astro Division's fixed assets was less than the purchase price of $8.6 million. Although there was a decrease in the value when considering the difference between the original purchase price and the sale price, there was income of approximately $4.4 million for federal tax purposes. The $4.4 million of income represented recapture of depreciation, *i.e.,* the difference between the sale price of $6.9 million and the depreciated basis at the time of sale of $2.5 million. Depreciation recapture income is the portion of the gain on the sale of the property that results from the fact that in determining the gain, the basis of the property sold is adjusted by the amount of depreciation previously taken with respect to the property.

{¶ 2} When it filed its Ohio franchise tax return for tax year 1990, Harsco apportioned the $4.4 million in net income between Ohio and the other states where it filed tax returns based on net income.

{¶ 3} The Tax Commissioner audited Harsco's return and imposed an additional assessment by *allocating* to Ohio eighty-seven percent of the $4.4

million. *Allocation* determines income based upon the situs of property that is the source of that income; here the situs of the property at the time of sale. R.C. 5733.051(A)-(G). *Apportionment* divides income from interstate business activity that is not allocated to a definite situs by using a formula based upon several factors. R.C. 5733.051(H).

{¶ 4} Harsco filed an application for review, correction, and refund. The commissioner affirmed his assessment and denied Harsco's refund application. Harsco appealed to the Board of Tax Appeals ("BTA").

{¶ 5} The BTA affirmed the commissioner's assessment, thereby denying Harsco's refund request. The BTA rejected Harsco's contention that the gain should be allocated to Ohio in the same proportion as the depreciation deductions that had been apportioned to Ohio bore to the total depreciation deductions. The BTA relied on *Borden, Inc. v. Limbach* (1990), 49 Ohio St.3d 240, 551 N.E.2d 1268, which required that such gains be allocated based upon the situs of the property at the time of sale. The BTA also based its holding on the fact that the statutory provisions at issue, R.C. 5733.051(C) and (D), simply did not support the allocation method proposed by Harsco.

{¶ 6} This cause is now before the court upon an appeal as of right.

———————————

*Baker & Hostetler, L.L.P., Edward J. Bernert* and *George H. Boerger*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Richard C. Farrin*, Assistant Attorney General, for appellee.

———————————

**COOK, J.**

{¶ 7} The question in this case is whether *Borden* controls Harsco's tax situation, that is, whether the term "capital gain" as used in R.C. 5733.051(C) and (D) includes recaptured depreciation income attributable to the sale of Ohio assets.

We find that *Borden* controls the outcome of this case, and we decline to reconsider the *Borden* analysis in light of years of taxpayers' reliance on it.

I

{¶ 8} Harsco sets forth two contentions. First it argues that the $4.4 million in recaptured depreciation income should be allocated to Ohio based on the percentage of depreciation previously taken in Ohio, not the location of the assets when sold. This procedure would result in a refund. Harsco alternately contends that the term "capital gain" represents only the difference between the selling price and the original cost basis. The result of either argument, in this case, is that there would be no allocation based on the percentage of assets with a situs in Ohio and the recaptured depreciation income would be apportioned under R.C. 5733.051(H), applied year by year to the period of ownership. Harsco has not pointed to, and we have not found, any statutory provisions that require or permit either of Harsco's alternative propositions.

{¶ 9} According to Harsco, the three alternative methods to treat the gain on sale at issue are as follows:

(1) APPORTION ALL DEPRECIATION RECAPTURE

{¶ 10} Apportion the recaptured depreciation income among the states where Harsco does business by using the apportionment formula that is used for all income except that income which is specifically allocated under the Ohio statute. This method is (a) the method unsuccessfully proposed by the commissioner in *Borden*, and (b) the method that Harsco used to assign the recaptured depreciation income on its return.

(2) ALLOCATE ALL DEPRECIATION RECAPTURE

{¶ 11} Allocate the recaptured depreciation income based on the location at the time of sale of the physical assets upon which the cumulative depreciation had been calculated. This is the method used by the commissioner to assess Harsco. It was approved by the BTA, although the BTA acknowledged that the application to

Harsco did result in a large disparity between recaptured depreciation income and the depreciation apportioned to Ohio over the years.

### (3) ALLOCATE BASED ON APPORTIONMENT

{¶ 12} Allocate the recaptured depreciation income based on the amount of depreciation deductions that were taken against Ohio income using the apportionment factors during the period of ownership. This method was asserted on Harsco's application for refund, but was rejected by the commissioner and the BTA. This method best matches the income from the recaptured depreciation to the cumulative benefit of the Ohio depreciation deduction taken by Harsco during the ownership of the assets.

{¶ 13} Harsco asks that income from recaptured depreciation be allocated based on the depreciation deduction that had been assigned to Ohio during the period of ownership (method No. 3 above). In the alternative, it asks that recaptured depreciation income be included with the apportioned income and assigned to Ohio by means of the apportionment formula (method No. 1 above).

{¶ 14} Harsco argues that method No. 2 above, the option implemented by the commissioner and approved by the BTA, is ill-conceived. Harsco complains that application of *Borden* results in a large disparity between depreciation recaptured and depreciation apportioned to Ohio over the years. Harsco contends that the *Borden* holding fails to match the recaptured depreciation income with the benefit of the prior deductions. Harsco laments the unfairness of the result in this case. It points to the fact that its cumulative depreciation deductions were not allocated based on the location of the property (only 8.1 percent had been attributable to Ohio), yet if *Borden* controls this situation, the income created solely because of the recapture of the prior depreciation deduction (eighty-seven percent allocated to Ohio) will be allocated rather than being correlated to the associated depreciation benefits.

{¶ 15} On the other hand, the Tax Commissioner urges that this court's interpretation in *Borden* controls. He contends that the portion of the $4.4 million in recaptured depreciation attributable to Ohio represents capital gain as that term was interpreted in *Borden* and thus must be allocated to Ohio. We agree.

{¶ 16} Harsco's argument centers on the question: Is recaptured depreciation a "capital gain"? Generally, this court would look to federal law for the definition of "capital gains." But a review of the federal tax law over the years shows that the federal treatment of capital gains has waxed and waned in response to political policies. There is no consistent federal definition of the term upon which this court can rely. Pursuant to Section 1001(a), Title 26, U.S.Code, gain is the excess of the amount realized over the adjusted basis of the property that is sold. Recaptured depreciation fits.

{¶ 17} Contrary to Harsco's theory, recaptured depreciation income is not a separate item of income; it simply reflects the fact that depreciation previously taken on the property was considered in adjusting (reducing) the basis of the Astro property. Income resulting from the recapture of depreciation represents capital gain and is to be allocated for Ohio franchise tax purposes according to R.C. 5733.051(C) and (D).

{¶ 18} The starting point for calculating the franchise tax on the net income basis is the taxpayer's federal taxable income. R.C. 5733.04(I). After the appropriate adjustments to net income have been made, R.C. 5733.051(C) and (D) provide that certain income of the corporation is to be allocated as follows:

"(C) Capital gains and losses from the sale or other disposition of real property located in this state are allocable to this state;

"(D) Capital gains and losses from the sale or other disposition of tangible personal property are allocable to this state if the property had a situs in this state at the time of sale and the taxpayer is otherwise subject to the tax imposed by this chapter."

**{¶ 19}** The only method provided for allocating such gains pursuant to R.C. 5733.051(C) and (D) is the location of the property sold. There is nothing in either provision that allows an allocation of such gains based upon the apportionment of the depreciation deductions previously taken for the property.

**{¶ 20}** *Borden* dictates that we affirm the BTA's decision. Harsco says that *Borden* does not ordain the result because of the real differences between income from capital gain and income from recaptured depreciation. That is, capital gain from the sale of property located in Ohio is obviously allocable to Ohio as opposed to other states, while the relation of recaptured depreciation income to Ohio is based on the amount of the deductions benefiting the taxpayer accumulated over the time of the ownership. But the only type of income involved in *Borden* was recaptured depreciation.

**{¶ 21}** In *Borden* the taxpayer sold real and personal property of one of its Florida divisions. For federal income tax purposes, *Borden* recognized two types of income from the sale of the Florida property: (1) long-term capital gain from the sale of property used in trade or business and (2) ordinary income from disposition of depreciable personal and real property (recaptured depreciation) under Sections 1245 and 1250, Title 26, U.S.Code.

**{¶ 22}** When it filed its Ohio franchise tax, based on net income, Borden allocated to Florida both the long-term capital gain and the ordinary income representing the recaptured depreciation resulting from the sale. Having allocated both types of income to Florida, Borden subtracted corresponding amounts of income from the net income to be apportioned. The Tax Commissioner accepted Borden's allocation of the long-term gain. However, the commissioner contended that the portion of the income representing recaptured depreciation should not be allocated to Florida, but instead it should be included in the income subject to apportionment. This argument tracks with Harsco's viewpoint.

**{¶ 23}** Writing for the majority in *Borden,* Justice Wright stated that no universal meaning for "capital gain" exists in the Internal Revenue Code and therefore the meaning of "capital gain" cannot be discerned from the Internal Revenue Code to be used to allocate income for Ohio's franchise tax. *Borden*, 49 Ohio St.3d at 242-243, 551 N.E.2d at 1271. The concept of "capital gain" is used in the federal tax system to categorize certain income for preferential tax rates. However, as contrasted to the federal system, the concern of the Ohio franchise tax system with capital gain, as expressed in R.C. 5733.051(C) and (D), is to "direct where the gain is taxed, not how much of it is taxed." *Id.* at 241, 551 N.E.2d at 1270.

**{¶ 24}** This case represents the mirror image of *Borden*. In *Borden* the situs of the property in question was outside Ohio; therefore, the recaptured depreciation was allocated outside Ohio, while here the situs of the property sold is in Ohio.

**{¶ 25}** Appellant has set forth a compelling argument concerning the fairness of proportional allocation. There is no statutory support, however, for its assertion that the recaptured depreciation income should be proportionally allocated based upon the past depreciation deductions taken in Ohio and other states. And *Borden* holds differently.

**{¶ 26}** Harsco would have us ignore or overrule *Borden*, contending that no rule of law was announced, because it was an opinion by a justice without a syllabus. As announced, *Borden* is authoritative. We decline to ignore or overrule *Borden*. This court ought to stay the course when it has only recently chosen one of two legitimate alternatives. *Borden* is nine years old, and during that time corporations and taxing authorities have acted in reliance upon it. Certainty in the law is important to both businesses and taxing authorities. If our decision in *Borden* was not what the General Assembly intended by R.C. 5733.051(C) and (D), it could have enacted a definition for "capital gains" to change the outcome of future cases. Any correction coming from the General Assembly would be prospective and avoid

the problems of retroactivity that would come with a reversal by this court of a legitimate position.

II

{¶ 27} Harsco contends that the Commerce and Equal Protection Clauses of the United States Constitution prohibit the allocation of the recaptured depreciation income to Ohio. In support of its argument that allocation of the recaptured depreciation income violates the Commerce Clause, Harsco cites *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326. Harsco argues that allocation of the recaptured depreciation income violates the fair-apportionment and nondiscrimination prongs of the four-prong test for the taxation of interstate commerce set forth in *Complete Auto*. But the question in *Complete Auto* was not whether certain income should be allocated or apportioned; the question in *Complete Auto* was whether Mississippi could impose its privilege tax upon interstate income. In this case, the income sought to be allocated is not interstate income; it is income that can be identified as earned in Ohio.

{¶ 28} If all of Harsco's income had been earned in Ohio, all of it would be allocated to Ohio and there would be no need to apportion any part of it to another state. In *ASARCO, Inc. v. Idaho State Tax Comm.* (1982), 458 U.S. 307, 315, 102 S.Ct. 3103, 3108, 73 L.Ed.2d 787, 794, the court stated: "As a general principle, a State may not tax value earned outside its borders." The corollary to this is that a state may tax value earned within its borders. If income is earned totally within a state and allocated to that state, then there can be no violation of *Complete Auto,* because (1) there is substantial nexus with the taxing state, (2) there is no discrimination against interstate commerce, (3) the tax is fairly related to services provided by the state, and (4) the fourth prong requiring fair apportionment need not be considered because no other state would have a claim to the income.

{¶ 29} Ohio cannot control other states' apportioning recaptured depreciation income that instead should be allocated solely to one state. In *Moorman Mfg. Co. v. Bair* (1978), 437 U.S. 267, 279, 98 S.Ct. 2340, 2347, 57 L.Ed.2d 197, 208, the court recognized that different states have different interpretations as to what is subject to taxation, stating, "[t]he potential for attribution of the same income to more than one State is plain." The court went on to state, however, that "[t]he prevention of duplicative taxation, therefore, would require national uniform rules for the division of income." *Id.*

{¶ 30} For the foregoing reasons, we find the decision of the Board of Tax Appeals to be reasonable and lawful; therefore, it is hereby affirmed.

*Decision affirmed.*

F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

RESNICK, J., concurs in judgment.

MOYER, C.J., and DOUGLAS, J., dissent.

————————————

**MOYER, C.J., dissenting.**

{¶ 31} I would overrule the holding of *Borden, Inc. v. Limbach* (1990), 49 Ohio St.3d 240, 551 N.E.2d 1268, and reverse the decision of the Board of Tax Appeals.

DOUGLAS, J., concurs in the foregoing dissenting opinion.

————————————