AMERICAN HOME PRODUCTS CORPORATION, n.k.a. Wyeth, as
Successor in Interest to A.H. Robins Company, Inc., Appellant,

v.

TRACY, Appellee.

[Cite as *Am. Home Prod. Corp. v. Tracy,* 152 Ohio App.3d 267, 2003-Ohio-1521.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–759.

Decided March 27, 2003.

268

Baker & Hostetler, L.L.P., Edward J. Bernert and Elizabeth A. McNellie; Jeffrey T. Ferriell and Kevin H. Giordano, for appellant.

Jim Petro, Attorney General, and Richard C. Farrin, Assistant Attorney General, for appellee.

DESHLER, Judge.

{¶ 1} Appellant American Home Products Corporation, n.k.a. Wyeth ("AHP"), appeals from a decision of the Ohio Board of Tax Appeals ("BTA"), which sustained a determination by appellee Roger W. Tracy, the Ohio Tax Commissioner, denying part of a corporate franchise tax refund claimed by one of AHP's subsidiaries, A.H. Robins Company, Inc. ("Robins II"). Robins II is the successor pursuant to bankruptcy reorganization proceedings to the original A.H. Robins Company, hereinafter referred to as "Robins I." The partial denial of the refund sought by AHP and its subsidiaries was based on a denial by the commissioner of a carry-forward net operating loss ("NOL") for the last year of business for Robins I.

{¶ 2} Robins II was incorporated as a wholly owned subsidiary of AHP for the purpose of undertaking the acquisition by AHP of the assets of Robins I, a manufacturer of prescription drugs and over-the-counter medications. Robins I, which was apparently an otherwise successful ongoing concern, was forced to seek reorganization under Chapter 11 of the United States Bankruptcy Code because of thousands of product liability lawsuits arising from its manufacture and distribution of an intrauterine birth control device known as the Dalkon Shield. The petition for bankruptcy was filed in 1985 in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division. Because of the multiplicity of issues engendered by the Dalkon Shield tort litigation, the district court retained its original jurisdiction, and the matter was

heard before a district court judge and bankruptcy judge concurrently. Three years after the petition was filed, the court approved the sixth and final proposed reorganization plan. *In re A.H. Robins* (E.D.Va.1988), 88 B.R. 742, affirmed sub nom. *Menard–Sanford v. Mabey* (C.A.4, 1989), 880 F.2d 694, certiorari denied, and *Menard–Sanford v. A.H. Robins* (1989), 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362. The principal aspect of this plan was to create a claimants' trust that would be used to pay the product liability claims in the Dalkon Shield litigation. The other ongoing businesses of Robins I were acquired by AHP through Robins II, by means of a merger of the two companies. The acquisition price included stock and a large cash payment that was used partially to fund the claimants' trust. With the exchange of stock on the effective date of merger of December 15, 1989, Robins I ceased to exist and Robins II carried on the surviving aspects of the business, free from further liability for the Dalkon Shield claims.

{¶ 3} The order entered by the bankruptcy court approving the reorganization plan provided that all assets of Robins I would be transferred to Robins II. It did not specifically mention NOL's as assets to which Robins II would succeed, although the bankruptcy court in later proceedings indicated that the property transferred to Robins II would include "such rights to use and benefit from the NOL as Robins I would have had." *In re A.H Robins Co.* (E.D.Va.1999), 235 B.R. 406, 408. None of the orders entered by the bankruptcy court identified the years or specified the amounts of such NOL's to which Robins II would succeed.

{¶ 4} For purposes of the present case, it is important to note that the state of Ohio, as a creditor of Robins I, was fully notified of the proceedings in the bankruptcy court and given the opportunity to participate in hearings and bring objections to the reorganization plan ultimately adopted. The record reflects that the state filed no objections to the plan and did not join in subsequent appeals from the bankruptcy court's order brought by various other parties to the proceedings.

{¶ 5} Robins II and other AHP subsidiaries subsequently attempted to claim a deduction for Ohio franchise tax purposes for NOL's incurred by Robins I in prior years. The Tax Commissioner allowed some NOL carry forward, but disallowed those portions of the NOL based on losses incurred by Robins I during the period of January 1, 1989, through the termination of the corporation on December 15, 1989. The commissioner based this denial on the fact that, Robins I having merged out of existence on December 15, 1989, was not a "taxpayer" as defined under Ohio franchise tax law for the 1990 tax year. Because Robins I was not a "taxpayer" during the 1990 tax year, it could not record an NOL for the preceding year that could be transferred to, and claimed by, Robins II in subsequent years.

{¶ 6} Believing that the commissioner's order contradicted the terms of the reorganization plan approved by the bankruptcy court, AHP twice sought an order from the bankruptcy court under that court's continuing jurisdiction to interpret the approved plan of reorganization. The state of Ohio and the state of New Jersey, which had also denied an NOL carryover under state tax-law grounds, filed motions to dismiss on the basis that the federal judiciary, including the bankruptcy court, was barred by the Eleventh Amendment to the United States Constitution from exercising jurisdiction over the matter:

{¶ 7} "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Eleventh Amendment, United States Constitution.

{¶ 8} The bankruptcy court found the Eleventh Amendment applicable and dismissed the motions for lack of jurisdiction. *In re A.H. Robins Co.* (1999), supra; *In re A.H. Robins Co.* (E.D.Va.2000), 251 B.R. 312. These decisions contain some dicta (some of which we have quoted earlier with respect to NOL's) from which the parties to the present appeal draw, not surprisingly, diametrically opposed inferences.

{¶ 9} AHP thereafter appealed from the commissioner's decision to the Ohio BTA. The BTA rendered a decision upholding the commissioner's determination, and AHP has timely appealed, bringing the following single assignment of error:

{¶ 10} "The Ohio Board of Tax Appeals erred in sustaining the Tax Commissioner's decision to assess American Home Products Corporation, n.k.a. Wyeth, as successor in interest to A.H. Robins Company, Incorporated for its use of an Ohio Net Operating Loss acquired as part of a Bankruptcy Plan of Reorganization of A.H. Robins Company."

{¶ 11} Several issues are raised under AHP's sole assignment of error. First, AHP asserts that the BTA erred in failing to give res judicata effect to the bankruptcy court order approving the reorganization plan, which specified that all property of Robins I (which AHP asserts would include the NOL for 1989) would be transferred to Robins II. AHP also asserts that the BTA erred in failing to acknowledge that certain Bankruptcy Code provisions, particularly 11 U.S. Bankruptcy Code Section 1123(a), would control the transfer of property and give the successor entity the right to the 1989 NOL, notwithstanding any Ohio tax law to the contrary. AHP further asserts that the BTA erred in finding that Robins I did not posses an NOL for franchise tax purposes for 1989.

{¶ 12} Our standard of review upon appeal from the BTA is simply defined: The decision of the BTA will be affirmed unless it is found to be unreasonable or unlawful. R.C. 5717.04; *Ohio Natl. Bank v. Franklin Cty. Bd.*

*of Revision* (Mar. 30, 2001), Franklin App. No. 00AP–1161, 2001 WL 309403. If this court finds the decision of the BTA to be unreasonable or unlawful, we may reverse the decision or modify it and enter final judgment in accordance with the modification. *Compuserve, Inc. v. Limbach* (1994), 93 Ohio App.3d 777, 782, 639 N.E.2d 1227.

{¶ 13} AHP's first argument asserts that the 1988 bankruptcy court order confirmed the plan of reorganization under which all assets of Robins I, including the NOL, would be transferred to Robins II, and that principles of res judicata, specifically the doctrine of collateral estoppel, should bar any attempt by the commissioner "from challenging the transfer of this asset."

{¶ 14} The term res judicata encompasses both the doctrines of claim preclusion and issue preclusion. It is the latter which is at issue in this case. Issue preclusion, or collateral estoppel, precludes the relitigation of matters in a subsequent proceeding between the parties to a prior action or those in privity with them. *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, paragraph one of the syllabus. This bar upon re-litigation applies even to instances in which a party is prepared to present new evidence or new causes of action not presented in the first action, or to seek remedies or forms of relief not sought in the first action. *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 383, 653 N.E.2d 226:

{¶ 15} "A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. (Paragraph two of the syllabus of *Norwood v. McDonald* [1943], 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, overruled; paragraph two of the syllabus of *Whitehead v. Gen. Tel Co.* [1969], 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, overruled to the extent inconsistent herewith; paragraph one of the syllabus of *Norwood, supra,* and paragraph one of the syllabus of *Whitehead, supra,* modified; 1 Restatement of the Law 2d, Judgments [1982], Sections 24–25, approved and adopted.)" Id., syllabus.

{¶ 16} This bar on relitigation, of course, applies even where the initial litigation forum was in federal court and subsequent litigation was undertaken in state court:

{¶ 17} "[A] claim litigated to finality in the United States district court cannot be relitigated in a state court when the state claim involves the identical subject matter previously litigated in the federal court, and there is present no issue of party or privity." *Rogers v. Whitehall* (1986), 25 Ohio St.3d 67, 70, 25 OBR 89, 494 N.E.2d 1387.

{¶ 18} We must note, however, that the Ohio Supreme Court has not completely abandoned, despite the broadened scope of collateral estoppel enunciated

in *Grava*, all exceptions to the general rule of issue preclusion. *Grava* specifically relied on the restatement, which itself contains exceptions that were noted by the Supreme Court in a subsequent decision:

{¶ 19} *"[R]ecognized exceptions* to the *general rule* of *issue preclusion* apply to the case at bar. Specifically, 1 Restatement of the Law 2d, Judgments (1980) 273–274, Section 28, states:

{¶ 20} " 'Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

{¶ 21} "* * *

{¶ 22} "(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.' " *State v. Williams* (1996), 76 Ohio St.3d 290, 295, 667 N.E.2d 932.

{¶ 23} Keeping in mind that under *Williams* and *Grava* there will subsist many possible circumstances in which claim preclusion will not apply to issues not fully litigated or specifically passed upon in a prior action, and even those that were fully passed upon, we recognize that the scope of claim preclusion is particularly difficult to establish where the initial proceeding took place in federal bankruptcy court, because of the extraordinarily wide scope of issues typically presented in bankruptcy proceedings. This proposition was noted in *E. Minerals & Chem. Co. v. Mahan* (C.A.3, 2000), 225 F.3d 330:

{¶ 24} "A bankruptcy case is not a discrete lawsuit. It is commenced by the filing of a petition for relief, which then provides a forum in which any number of adversary proceedings, contested matters, and claims will be litigated. Claim preclusion only bars claims arising from the same cause of action previously raised, not every conceivable claim that could have been brought in the context of a bankruptcy case over which the court would have had jurisdiction. * * * Claim preclusion would have a broad scope indeed if it barred every claim over which a bankruptcy court might have had jurisdiction." Id. at 337, and fn. 12.

{¶ 25} In the present case, the principal order of the bankruptcy court confirming the reorganization clearly contemplated the transfer of all assets of Robins I, including any NOL carryover to which Robins I would be entitled to

Robins II. The BTA's determination, however, was not that there was a bar to *transfer* of the NOL, as appellant's brief seems to assert, but, rather, that no NOL could be claimed by Robins I for 1989, based upon termination of the corporation on December 15, 1989, and thus there was no NOL to which the successor corporation could succeed. As the BTA pointed out, the commissioner allowed Robins II a deduction for carry forward NOL's for taxable years prior to 1989 and only disallowed the NOL carryover for 1989 itself.

{¶ 26} We agree with the BTA that, while the right to transfer any NOL to which Robins I was entitled is implicit in the confirmed reorganization plan, the existence and amount of an NOL for each of the various years involved is not set forth in the bankruptcy court order, and must be defined under state law. While Robins II clearly retained "such rights to use and benefit from the NOL as Robins I would have had," as the bankruptcy court stated in its 1999 decision on motions, this language is equally supportive of the converse proposition that Robins II could not succeed to any NOL rights which Robins I did not possess.

{¶ 27} "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" *Butner v. United States* (1979), 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136.

{¶ 28} *Butner* has been widely relied upon, albeit with differing results depending on the facts and local law, in subsequent cases involving interpretation of bankruptcy court orders. See, e.g., *Abele v. Phoenix Suns Ltd. Partnership* (C.A.9, 1995), 73 F.3d 218, 219: "Since the Bankruptcy Code itself does not determine the existence and scope of a debtor's interest in property, these threshold issues are properly resolved by reference to state law."

{¶ 29} On the facts before us, considering applicable Ohio tax statutes, the chronology of proceedings, and the bankruptcy court's order, we conclude that res judicata does not bar the Ohio Tax Commissioner from making an independent determination of the tax matters raised and finding under Ohio law that Robins I had no NOL in 1989 to transfer to Robins II. While the bankruptcy court order approved a plan that provided in general terms that Robins II would succeed to the assets of Robins I (which can certainly be assumed to include any NOL available to Robins I), that order did not explicitly define the scope of such an NOL. Pursuant to *Butner,* we must assume that the bankruptcy court did not presume to create a tax benefit to either Robins I or Robins II that would not have existed under Ohio tax law absent the bankruptcy proceedings, at least not

without specific delineation of such a benefit to which the Ohio tax authorities would explicitly have consented as parties to the bankruptcy proceedings. No such specific description of the NOL exists in the reorganization plan or the bankruptcy court's 1988 order adopting the plan, and thus the determination of the availability of an NOL for 1989 was properly left for determination by the commissioner.

{¶ 30} We next examine AHP's contention that the provisions of 11 U.S. Bankruptcy Code Section 1123(a), by operation of the Supremacy Clause of the United States Constitution, preempts state taxation law and entitles AHP to the NOL carryover from 1989. The relevant provisions of that section of the Bankruptcy Code state as follows:

{¶ 31} "Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—

{¶ 32} "(1) designate, subject to section 1122 of this title, classes of claims, other than claims of a kind specified in section 507(a)(1), 507(a)(2), or 507(a)(8) of this title, and classes of interests;

{¶ 33} "(2) specify any class of claims or interests that is not impaired under the plan; ·

{¶ 34} "(3) specify the treatment of any class of claims or interests that is impaired under the plan;

{¶ 35} "(4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest;

{¶ 36} "(5) provide adequate means for the plan's implementation, such as—

{¶ 37} "(A) retention by the debtor of all or any part of the property of the estate;

{¶ 38} "(B) transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan;

{¶ 39} "(C) merger or consolidation of the debtor with one or more persons;

{¶ 40} "(D) sale of all or any part of the property of the estate, either subject to or free of any lien, or the distribution of all or any part of the property of the estate among those having an interest in such property of the estate[.] * * *"

{¶ 41} AHP does not directly attack the BTA's interpretation of Ohio's statutory tax scheme under which the commissioner determined that neither Robins I nor Robins II was entitled to an NOL carryover based on losses incurred by Robins I in 1989. We will therefore not undertake a complete reiteration of Ohio's governing franchise tax statutes. In brief, pursuant to R.C.

5733.04(E), the Ohio NOL deduction is permitted only for a taxpayer's allocated and apportioned loss, as incurred during a taxable year. R.C. 5733.04 defines the term "taxpayer" and "taxable year":

{¶ 42} "(B) 'Taxpayer' means a corporation subject to the tax imposed by section 5733.06 of the Revised Code.

{¶ 43} "* * *

{¶ 44} "(E) 'Taxable year' means the period prescribed by division (A) of section 5733.031 of the Revised Code upon the net income of which the value of the taxpayer's issued and outstanding shares of stock is determined under division (B) of section 5733.05 of the Revised Code or the period prescribed by division (A) of section 5733.031 of the Revised Code that immediately precedes the date as of which the total value of the corporation is determined under division (A) or (C) of section 5733.05 of the Revised Code.

{¶ 45} "(F) 'Tax year' means the calendar year in and for which the tax imposed by section 5733.06 of the Revised Code is required to be paid."

{¶ 46} The income from the proceeding year is used in determining a corporation's franchise tax, but only if the corporation was a "taxpayer" as defined under the statute. If the corporation was not a "taxpayer" on January 1 of the ensuing tax year, the proceeding period would not be a "taxable year" and net income from that period would not be subject to Ohio franchise tax. The corollary which applies to the present case is that, if the corporation is not subject to Ohio franchise tax for the ensuing year, losses from the previous year could not be used as a deduction by the corporation or a successor pursuant to merger. *Gulf Oil Corp. v. Lindley* (1980), 61 Ohio St.2d 23, 30–31, 15 O.O.3d 42, 398 N.E.2d 790.

{¶ 47} "Had [the subject corporation] existed on January 1, 1975, this accounting period would have been for the fiscal and taxable year ending July 28, 1974. But [the subject corporation] was not in business on January 1, 1975. Thus the fiscal year ending July 28, 1974, was not a taxable year for it under R.C. 5733.04(I)(1); consequently, these losses did not occur in a taxable year and cannot be deducted. Despite [the subject corporation's] incurring of a net operating loss, the franchise tax does not recognize the loss as a deduction. Therefore, neither it nor its successor may deduct the loss." *Litton Industrial Products, Inc. v. Limbach* (1991), 58 Ohio St.3d 169, 171, 569 N.E.2d 481.

{¶ 48} Similarly, if Robins I had existed on January 1, 1990, in the present case, it would have been a taxpayer for the 1990 tax year, and the calendar year ending December 31, 1989, would have been a taxable year for Robins I. Since, however, Robins I was not in business on January 1, 1990, Robins I was not a taxpayer for the 1990 tax year, and the period of January 1,

1989, to December 15, 1989, was not a taxable year for Robins I. Pursuant to *Gulf Oil* and *Litton,* the loss incurred during that period did not occur in a taxable year, and neither Robins I nor its successor, Robins II, had a right to deduct the NOL.

{¶ 49} Although neither *Gulf Oil* nor *Litton* involved a bankruptcy reorganization, no distinction is made under Ohio tax law regarding the form of reorganization. Corporations merged out of existence during the course of the tax year are not "taxpayers" for franchise tax purposes for losses incurred during the year in which the corporation ceased to exist, and the NOL incurred in the final year will not be carried forward.

{¶ 50} The only distinction which could be made from a bankruptcy proceeding, and the one that is here argued by AHP, is that the language of 11 U.S. Bankruptcy Code Section 1123(a), "[n]otwithstanding any otherwise applicable nonbankruptcy law," refers to both federal and state law and supersedes state tax law in the present case in permitting continuity of property interests without impairment deriving from the corporate transition imposed by the reorganization plan. The NOL having been enumerated as property to be transferred to the successor corporation, AHP argues, no state tax principles that would subject Robins II to a decrease in the NOL amount allowed should be permitted. We do not find this argument persuasive. There is no indication that Congress intended the Bankruptcy Code to supersede any relevant state statute which might peripherally be interpreted to conflict with a bankruptcy order, even where the statute and bankruptcy order could be harmonized, as they can in the present case. The holding in *Butner* is ample support for the concept that "there is no reason why [property interests] should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner* at 55, 99 S.Ct. 914, 59 L.Ed.2d 136. The kind of massive preemption of all state law regulating property interests, including tax law, which AHP advocates, would have imponderable consequences. By far the better reasoning, as was adopted by the BTA, is that, while property may be allocated in a bankruptcy proceeding, the extent and nature of that property, unless specifically defined, enumerated, and stipulated to before the bankruptcy court by interested parties, may yet be determined under applicable state law. We accordingly find that the BTA did not err in determining the amount of NOL applicable under state law and that this determination did not conflict with applicable provisions of the federal Bankruptcy Code.

{¶ 51} In summary, we find that the BTA did not err in refusing to give res judicata effect to the confirming order of the bankruptcy court; that the BTA did not err in concluding that applicable federal bankruptcy statutes did not preempt Ohio tax law on these facts; and that the BTA did not err in finding that neither

Robins I nor Robins II was entitled to an NOL to be carried forward from 1989. The decision of the BTA is therefore reasonable and lawful, and is affirmed.

Decision affirmed.

BOWMAN and TYACK, JJ., concur.