OPINION
{¶ 1} Crescent Communities, Inc. ("Crescent") and Michael J. Young ("Young"), defendants-appellants, appeal from a judgment of the Franklin County Court of Common Pleas adopting the magistrate's decision in favor of Jack D. Holstein, plaintiff-appellee.
 {¶ 2} This case was transferred to the Franklin County Court of Common Pleas from Montgomery County on August 1, 2000. Appellee's complaint sought specific performance of a real estate purchase contract entered into between appellee and Crescent. Young was the principal stockholder and president of Crescent. The following facts are undisputed.
 {¶ 3} In 1996, Crescent purchased 28.368 acres of real estate located in Randolph Township, Montgomery, Ohio ("property") subject to a purchase-money mortgage. In 1999, the property went into foreclosure as the result of Crescent's failure to pay the mortgage and was sold at a sheriff's sale for $210,000. Prior to confirmation of the sale, Young sought out appellee for assistance in redeeming the property.
 {¶ 4} On August 13, 1999, appellee and Crescent entered into a real estate purchase contract ("contract" or "real estate contract"), which provided Crescent with sufficient funds to redeem the property. Pursuant to the contract, Crescent had the option to repurchase the property from appellee within 60 days after the closing at a regularly increasing price over that 60-day period. The contract also provided that, at closing, Crescent would deliver to appellee a recordable general warranty deed to the property. The contract further stipulated that, on or before the expiration of Crescent's right to repurchase the property, Crescent would deliver to appellee "any and all documents, permits, authorities and records (including, but not limited to, plats, engineering or architectural drawings, building plans, site plans, and building permit applications and permits) used by [Crescent], or that would be useful to [appellee], in connection with the ownership, development or resale of the Property." The closing for the real estate contract was held on the same day. Crescent, through Young, executed and delivered a general warranty deed ("deed") to appellee. In exchange, appellee gave Young a check payable to the Montgomery County Clerk of Courts for $210,000, the amount necessary to redeem the property from the sheriff's sale.
 {¶ 5} At the end of the closing, Young agreed to deposit the $210,000 with the clerk's office in Montgomery County and obtain an entry setting aside the sheriff's sale and redeeming the property. Young also offered to record the deed for appellee because he was traveling to Montgomery County to redeem the property. Appellee gave the deed to Young for that purpose.
 {¶ 6} Young thereafter deposited the purchase price of $210,000 with the Montgomery County Clerk of Courts and obtained and filed the appropriate entry setting aside the sale. Young did not, however, record the deed. Young claimed that he submitted the deed for recording, but it was rejected because of a faulty legal description. Young neither corrected the faulty legal description in the deed nor returned the deed to appellee so that appellee could have it corrected and recorded.
 {¶ 7} The Montgomery County Recorder's Office had noted on the prior deed to Crescent that the legal description to that deed would need to be corrected before the next transfer of the property. Nevertheless, when Crescent executed and delivered the deed to appellee at the August 13, 1999 closing, it still contained the same unrecordable legal description. Crescent, therefore, did not provide appellee with a recordable general warranty deed at closing, although Crescent agreed to do so in the contract.
 {¶ 8} In the 60 days after the closing, Crescent never exercised its option to repurchase the property. Moreover, Crescent never returned the deed to appellee. Young claimed that he no longer had the original deed in his possession and did not know where it was. Finally, Crescent never delivered to appellee any of the documents, permits, authorities, or records required by the contract.
 {¶ 9} On April 14, 2000, appellee filed the present lawsuit against appellants to obtain specific performance of the real estate contract. On January 17, 2002, during the pendency of this case, Crescent filed a Chapter 7 bankruptcy in the bankruptcy court, and an automatic stay went into effect on the same day. On April 10, 2002, the bankruptcy court granted appellee's motion for relief from the automatic stay and did not assert jurisdiction over this case. The bankruptcy court required only that the bankruptcy trustee ("trustee") be given notice of pleadings and hearings in the present case. Before granting the relief from stay, the bankruptcy judge heard and ruled against the argument that the best method of proceeding was to sell the property through the bankruptcy court and litigate any other issue there. In essence, the bankruptcy court held that this action to decide the interests of the property belonged in state court.
 {¶ 10} On June 11, 2002, the trustee filed a motion to intervene and for a continuance in the present case, but the trial court denied the motion on June 25, 2002. The matter proceeded to trial before a magistrate on June 27, 2002, without the trustee and solely on appellee's complaint. On July 11, 2002, the magistrate issued a decision in favor of appellee, granting an order quieting title in the property to appellee and an order of specific performance requiring appellants to deliver the deed and relevant documents to appellee. Appellants filed a timely objection to the decision.
 {¶ 11} On August 10, 2002, the trial court overruled appellants' objection to the magistrate's decision, holding that: (1) proper transference of a property deed is not a personal service; (2) the parties impliedly consented to try the issue of quiet title pursuant to Civ.R. 54(E)(3)(b); and (3) the bankruptcy court already determined that the bankruptcy trustee was not a necessary party to determine ownership of the property prior to the commencement of the estate when it granted appellee relief from the automatic stay. On November 1, 2002, the court determined appellee the owner of the property as of August 13, 1999, and entered an order to quiet title and for specific performance. Appellants appeal, asserting three assignments of error:
[I.] The Trial Court erred as a matter of law in ordering specific performance of personal services and to perform acts which can only be undertaken by the Bankruptcy Trustee, who is not a party in this action.
[II.] The Decision of that Court of Common Pleas is erroneous as a matter of law as it purports to determine ownership and quiet title to real property in the absence of the Bankruptcy Trustee, who is an indispensible party to such determination.
[III.] The Court erred as a matter of law in granting Appellee quiet title and specific performance as an essential element of a quiet title action is that one is in possession.
 {¶ 12} In their first assignment of error, appellants argue that specific performance of personal service contracts is prohibited, and supplying development records and correcting the legal description in the deed, as ordered by the trial court, are personal services because appellants need to use expertise and knowledge to determine which records are relevant. Appellants further argue that the lack of such documents and description in the deed should be used in the assessment of damages instead of specific performance.
 {¶ 13} The issuance of a decree of specific performance lies in the sound discretion of the trial court. White v. Nemastil (1985),29 Ohio App.3d 1. As a principle of equity, it is controlled by considerations of justice and fair dealing. Naughton v. Morford-Wood Co. (1914), 90 Ohio St. 61. A reviewing court will not disturb the action of a lower court in granting or denying specific performance unless it appears from the record that there has been an abuse of discretion or that the finding was erroneously reached. Sandusky Properties v. Aveni (1984), 15 Ohio St.3d 273, 274; Beach v. Sweeney (1958), 167 Ohio St. 477. Further, it is long-settled law that a court of equity will not decree specific performance of a contract for personal services. This rule is based upon the fact that the mischief likely to result from an enforced continuance of the relationship after it has become personally obnoxious to one of the parties is so great that the interests of society require the remedy be denied. Doe v. Adkins (1996), 110 Ohio App.3d 427, citing Sokolowsky v. Antioch College (June 11, 1975), Greene App. No. 863.
 {¶ 14} Appellants' main support for its argument is Felch v. Findlay College (1963), 119 Ohio App. 357, and Nunn v. Boal (1928),29 Ohio App. 141. We find that appellants' reliance on both cases is misplaced. In Felch, Findlay College's employee, Felch, sought by injunction the specific performance of an employment contract. Id. at 358. On appeal, the appellate court held that, generally, specific performance of personal service contracts is prohibited. Id. at 359. The court did point out, though, that specific performance has been awarded under some circumstances where services have a unique and peculiar value. Id. However, the court in Felch concluded that it could not decree specific performance of the labor contract existing between Findlay College and Felch, so as to require Findlay College to continue Felch in its service or to rehire him. The court reasoned that Felch's services would be continuous over a long period of time, and, although his services might once have had a unique and peculiar value, they no longer had any value as far as the college was concerned.
 {¶ 15} In Nunn, Nunn entered into an oral contract with an elderly husband and wife, whereby they promised to give their real property to Nunn if he cared, nursed, and supported them during their natural lives. After the wife died and the husband moved without giving the property to Nunn, Nunn sought specific performance of the contract. The court found that it could not enforce either side of the agreement. The court refused to order specific performance of the real estate contract because to do so would also have required an order that Nunn continue to care for and nurse the husband until his death. The court concluded it could not order Nunn to specifically perform personal services of such a "confidential or personal nature." Id. at 144.
 {¶ 16} In the present case, appellee had already paid the contract price, and appellants had executed the deed to appellee. Specific performance of such a valid real estate contract cannot be converted to a personal service contract merely because some human clerical efforts are needed to complete the conveyance of deeds and transmit relevant documentation. If this were so, every real estate transaction would become a personal service contract and could not be specifically enforced. These clerical efforts ordered by the trial court were not the type of services that required any specific knowledge, ability, experience, or the exercise of judgment, and would not require performance over a long period. See Felch, at 358-359. The services were also not of a confidential or personal nature. See Nunn, at 144. Conveying a recordable general warranty deed upon closure of a real estate transaction is an essential part of the real estate contract, and it cannot be said that such a customary and integral task would become a personal service upon the breach of the real estate contract. Further, consistent with the reasoning in Felch, real estate is almost always unique, and specific performance of a written contract for its sale is a common remedy for a breach of that contract. Gleason v. Gleason (1991),64 Ohio App.3d 667, 672. In other words, specific performance of a contract for an interest in real property "may be had as a matter of right, because there is nothing else in the world exactly equivalent to conveyance of the particular piece of real estate contracted for." Link v. Burke (1926), 5 Ohio Law Abs. 676, 676-677; Smith v. Littrell (Dec. 17, 2001), Preble App. No. CA2001-02-0004; Gleason, at 672. Thus, we do not find the trial court's order of specific performance was based upon personal services, and specific performance was the proper remedy to enforce the real estate contract.
 {¶ 17} Appellants also stress the fact that they lack the funds or authority to correct legal descriptions in the deed or to provide such documents in the possession of the trustee. However, once the estate is determined to be the property of appellee, it is no longer a part of the bankruptcy estate, and, thus, the trustee would have no authority to retain those documents. All relevant documentation should revert back to the rightful and true owner, appellee. In addition, this conclusion counters appellants' argument that they will not able to perform because all documents and funds are in the possession of the trustee. Therefore, upon consideration of all the facts, the trial court did not abuse its discretion, and we overrule appellants' first assignment of error.
 {¶ 18} In the second assignment of error, appellants argue that, pursuant to Section 544, Title 11, U.S. Code, and R.C. 5301.25(A), the bankruptcy trustee is an indispensable party to the determination of the real estate's ownership, and the trial court erred in deciding the ownership without the trustee. In reviewing the trial court's denial of a motion to intervene, the proper standard of review is whether the trial court's action constituted an abuse of discretion. Young v. Equitec Real Estate Investors Fund (1995), 100 Ohio App.3d 136, 138. Section 544, Title 11, U.S. Code provides:
(a) [T]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by —
* * *
(3) [A] bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtained the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
(Emphasis added.)
 {¶ 19} R.C. 5301.25(A) provides:
All deeds, land contracts referred to in division (B)(2) of section 317.08 of the Revised Code, and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments, other than as provided in division (C) of this section and section 5301.23 of the Revised Code, shall be recorded in the office of the country recorder of the county in which the premises are situated, and until so recorded or filed for record, they are fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed or land contract or instrument.
(Emphasis added.)
 {¶ 20} Appellants contend that, pursuant to Section 544, Title 11, U.S. Code, the trustee becomes a bona fide purchaser as of the commencement of the bankruptcy case and stands in the shoes of the debtor. Appellants further claim that, as a bona fide purchaser, the trustee's claim is superior to any unrecorded deed pursuant to R.C.5301.25(A). Finally, appellants argue that, without the bankruptcy trustee as a party to the case, they did not have the authority or funds to comply with the court's order.
 {¶ 21} Appellants' reliance on R.C. 5301.25(A) is unfounded because, although Section 544, Title 11, U.S. Code grants the trustee the status of a bona fide purchaser, it does not make the trustee a subsequent bona fide purchaser within the scope of R.C. 5301.25(A). As a general rule, section 544 of the bankruptcy code does not bestow upon the trustee any greater rights than those accorded by applicable law to a creditor possessing the same status as the trustee. In re Phillips (Bankr.N.D.Ohio 1984), 41 B.R. 148, 153; Angeles Real Estate Co. v. Kerxton (C.A. 4, 1984), 737 F.2d 416. The issue then is which law governs the property in question.
 {¶ 22} "While it is federal law which provides the trustee with his `strong arm' powers, [the relevant federal law is 11 U.S.C. § 544], his exercise of those powers is controlled by the substantive law of the jurisdiction governing the property in question[.]" In re Roman Crest Fruit, Inc. (Bankr.S.D.N.Y. 1983), 35 B.R. 939, 946-947. In addition, it is well-established that state law defines property rights of the bankruptcy estate pursuant to Section 544, Title 11, U.S.Code. Am. Home Prod. Corp. v. Tracy, 152 Ohio App.3d 267, 274, 2003-Ohio-1521, citing Butner v. United States (1979), 440 U.S. 48, 55, 99 S.Ct. 914; McKenzie v. Irving Trust Co. (1945), 323 U.S. 365, 370, 65 S.Ct. 405. Only after the determination is made under state law as to what interest the debtor has in the property may federal bankruptcy law then dictate to what extent that interest is property of the estate. In re N.S. Garrott 
Sons v. Union Planters Natl. Bank (C.A. 8, 1985), 772 F.2d 462, 466. In the present case, when the bankruptcy court granted appellee relief from the automatic stay, it recognized that state law determines the property ownership, and that only when the debtor has any interest in the property can the issue be presented in the bankruptcy court.
 {¶ 23} The next issue then becomes whether the debtor has any interest in the estate; more specifically, whether a lack of recording invalidates the transfer between Crescent and appellee. The Ohio Supreme Court has consistently held that recording is not necessary to give validity to instruments of conveyance, and whether or not recorded, a deed passes title upon its proper execution and delivery, so far as grantor is able to convey it. Sidle v. Maxwell (1854), 4 Ohio St. 236,240-241; Wayne Bldg. Loan Co. v. Yarborough (1967),11 Ohio St.2d 195, 212. The main purpose of the recording is to establish priority among creditors and bona fide purchasers. Id. at 205.
 {¶ 24} In the present case, it is undisputed that the property transferred to appellee on August 13, 1999, when the deed was executed, delivered, and accepted. The fact that the deed has not been recorded has no effect on the transfer of the property from appellants to appellee. Therefore, appellee is the legal and equitable owner of the disputed property, and this ownership interest arose 18 months before the bankruptcy petition was filed, far outside of the scope of the bankruptcy estate. It should be noted that this determination merely establishes appellee's and appellants' respective interests in the property, and in no way affects the trustee's avoidance power under Sections 544 and 547, Title 11, U.S.Code. Accordingly, appellants have no interest in the subject property, and, thus, the bankruptcy trustee is not necessary in the present case to determine ownership. Moreover, because appellants cannot give someone else's property to their bankruptcy estate, we reject appellants' argument that they lack the authority to comply with the trial court's order solely because all documents are in the possession of the trustee. The trustee has no right to retain property not related to or part of the bankruptcy estate, and it certainly would be within appellants' power to promulgate the transfer of such documents. As such, appellants' second assignment of error is overruled.
 {¶ 25} In the third assignment of error, appellants argue the trial court erred in granting to appellee both an order quieting title and an order for specific performance because the two are mutually exclusive. More specifically, appellants claim that, pursuant to R.C.5303.01 and Lichtenberger v. Milligan (1939), 63 Ohio App. 107, an action to quiet title is a statutory remedy and is not available to one out of possession who claims the entire estate. Appellants contend that, because appellee had neither pled nor proven that he was in possession of the property, the trial court erred in granting an order quieting title and for specific performance.
 {¶ 26} It is recognized in Ohio that actions to quiet title are permitted exclusively pursuant to statute. R.C. 5303.01. Dominion Homes, Inc. v. Shinoskie, Franklin App. No. 01AP-794, 2002-Ohio-2298, at ¶ 16; Chef Italiano Corp. v. Kent State Univ. (Feb. 21, 1992), Portage App. No. 91-P-2308; Lichtenberger, at 113-114; Goss v. Franklin Real Estate Co. (July 9, 1985), Muskingum App. No. CA-85-3. R.C. 5303.01
provides that:
An action may be brought by a person in possession of real property, by himself or tenant, against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest. Such action may be brought also by a person out of possession, having, or claiming to have, an interest in remainder or reversion in real property, against any person who claims to have an interest therein, adverse to him, for the purpose of determining the interests of the parties therein.
 {¶ 27} In interpreting R.C. 5303.01, we look to the Ohio Supreme Court's decision in Raymond v. Toledo (1897), 57 Ohio St. 271:
Section 5779, [Revised Statutes], gives a right of action to quiet title to one out of possession who claims an estate or interest in remainder or reversion in real property. It does not give such right to one out of possession who claims the entire estate.
Id., at paragraph seven of the syllabus.
 {¶ 28} As the language of R.C. 5303.01 has remained unchanged from the previous statute, Revised Statute 5779, it is generally recognized in Ohio that the Ohio Supreme Court's interpretation of that language also remains consistent. Chef Italiano Corp; Paden v. Miller (Feb. 8, 2001), Guernsey App. No. 00CA29. Thus, it is clear that, pursuant to R.C. 5303.01, to prevail in an action to quiet title, a person must meet the minimum statutory requirements of "possession of real property" or "an interest in remainder or reversion in real property."
 {¶ 29} In the present case, appellee has not proven that he was in possession of the property. A review of the record reveals no evidence demonstrating appellee's actual possession of the property in question. In the absence of actual possession, appellants cannot claim an interest in the entire estate under R.C. 5303.01, and appellee lacked standing to bring the quiet title action. Therefore, the trial court erred ordering such. Appellants' third assignment of error has merit and is sustained.
 {¶ 30} In accordance with the foregoing, we overrule appellants' first and second assignments of error and sustain appellants' third assignment of error. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part and reversed in part; case remanded.
PETREE, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.